THE STATE, EX REL. JOHN F. O'HARA, v. LAWRENCE FAGAN, MAYOR OF THE CITY OF HOBOKEN.

56  279
66  168

On July 26th, 1893, the common council of Hoboken passed a resolution for the payment of the salaries of the city officers for the preceding quarter, among them $250 to the counsel of the commissioners of adjustment. This resolution was signed by the mayor, he being under the impression that the salary of the counsel was not included in it, and intending not to approve a resolution for the payment of that salary. The reason assigned by the mayor for his unwillingness to approve of the payment of this salary is that, about two years ago, the counsel was paid by the city officials, for his salary as such counsel, $444.12 in excess of what was due to him, which he still retains. For this reason there appears to be substantial ground. *Held* that, under these circumstances, a writ of *mandamus* should not be issued commanding the mayor to sign and deliver to the relator a warrant for the payment of the salary.

On *mandamus*.

Argued at November Term, 1893, before Justices DIXON and ABBETT.

For the relator, *James F. Minturn.*

For the defendant, *William D. Edwards.*

The opinion of the court was delivered by

DIXON, J.   On July 26th, 1893, the common council of Hoboken passed a resolution directing the city clerk to draw warrants on the salary fund, in favor of the city officers, to pay salaries in full to August 1st, 1893, and among the officers and salaries named in the schedule annexed to the resolution, was "James F. Minturn, one quarter's salary, as counsel to the commissioners of adjustment, $250."

Pursuant to section 34 of the city charter, this resolution was submitted to the mayor on July 27th, and signed by him.

On July 26th, 1893, *in anticipation* of such a resolution, warrants for the payment of the various salaries were drawn and signed by the mayor.   This was in violation of the charter, section 19 of which directs that no money shall be paid out except on warrant signed by the mayor and clerk, and that no warrant shall be drawn by said officers, except *in pursuance* of an order of the council.

On July 27th, the mayor canceled the warrant in favor of Mr. Minturn, by drawing his pen through his signature.

On October 19th, 1893, the relator, assignee of Mr. Minturn, obtained a rule that the mayor show cause why a *mandamus* should not issue commanding him to sign and deliver to the relator a warrant for said quarter's salary.   Under this rule testimony has been taken which shows that the mayor signed the resolution of July 26th, thinking that Mr. Minturn's salary was not included therein, and that he signed the warrant for such salary by inadvertence, among a number of

others, having previously instructed the clerk's assistant not to present him a warrant for Mr. Minturn's salary, as he did not intend to sign it.

The reasons given by the mayor for his refusal to sign such a warrant are these: Prior to January 6th, 1891, Mr. Minturn was the attorney of the city. On that day the commissioners of adjustment of the city organized under the statute known as the Martin act (*Rev. Sup.*, p. 608), and recommended that the common council allow the corporation attorney the increased salary provided by law as compensation for services as counsel to the commissioners. Thereafter Mr. Minturn acted as such counsel, as his duty was under section 3 of the Martin act. On June 10th, 1891, the common council passed a resolution appointing Mr. Minturn attorney and counsel to the commissioners at a salary " of $1,000 as fixed by law." This resolution was passed under three supplements to the Martin act (*Pamph. L.* 1889, *pp.* 50, 308; *Id.* 1891, *p.* 450), which authorized the common council to increase the salary of the city counsel to an amount not exceeding $1,000 per annum above that already paid, "such increase to take effect from the time of the passage of any such resolution." On July 30th, 1891, the city paid Mr. Minturn $583 for his salary as counsel to the commissioners, and on each succeeding quarter day, up to May 1st, 1893, paid him $250, thus making the total of $2,333.

The mayor insists that the salary of $1,000 per annum began to run on June 10th, 1891, the time of the passage of the council's resolution; that the payment of $583 on July 30th, 1891, was an error, caused by a supposition that the salary began January 6th, 1891, when the commissioners organized; that Mr. Minturn's salary, up to and including the quarter ending May 1st, 1893, amounted to only $1,888.88, while the payments made amounted to $2,333, and that, therefore, Mr. Minturn, on August 1st, 1893, owed the city $444.12, which it had a right to set off against his claim for the preceding quarter's salary.

If the mayor's contention is correct (and it certainly seems

to be supported by the language of the statute), then the fact that, on July 30th, 1891, the city officials paid Mr. Minturn $444.12 more than the statute authorized them to pay, does not bar the city from recovering that sum. *Demarest* v. *New Barbadoes,* 11 *Vroom* 604. The city's claim, however, is not one which *necessarily* defeats the claim of Mr. Minturn; it can do so only if pleaded by way of set-off. But it would clearly be the duty of public officials to interpose such a plea to any ordinary action brought by Mr. Minturn or his assignee against the city for his salary, and hence the question for us is whether, by awarding to him the extraordinary remedy by *mandamus,* we will preclude the city from this defence.

It is the practice of this court, at the instance of private interested parties, to compel municipal officers (not excepting even the mayor) to sign warrants for the payment of claims which have been duly ordered paid by the municipal authorities. *Ahrens* v. *Fiedler,* 14 *Vroom* 400; *Salmon* v. *Haynes,* 21 *Id.* 97. In such cases, however, the court has always considered the claims indisputably clear *ex æquo et bono.* If a private relator apply for a *mandamus,* directing a municipal officer to perform a ministerial duty incumbent upon him by statute, the relator must clearly show not only that the defendant is bound to do the act in question, but that the relator's right to have it done is such as the law ought, at the relator's suit, to enforce. *Nicholson Pavement Co.* v. *Mayor of Newark,* 6 *Vroom* 396. The writ cannot be claimed by such relators as their right, and the court in its discretion will refuse it, if circumstances appear which render the justice or propriety of its allowance doubtful. *Clarke* v. *Jersey City,* 13 *Vroom* 94; *City of Paterson* v. *Barnet,* 17 *Id.* 62, 67.

In the present case, we think it at least doubtful that justice will be promoted by the allowance of the writ. There are two reasons for withholding it—*first,* that the action of the legislative authority of the city in ordering the warrant was not deliberate, but resulted from a mistake on the part of the mayor, but for which he would have vetoed the resolution, and then the concurrence of two-thirds of the members

of council would have been needed to pass it; *second,* the relator's right to have the sum of money named in the resolution is not one which ought to be enforced without affording the city an opportunity to set off its counter-claim.

The writ of *mandamus* should not issue in a doubtful case, and therefore should now be refused.

Let the rule to show cause be discharged, with costs.